JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**12 CRIM 005**

UNITED STATES OF AMERICA                        :        SEALED
                                                :        <u>INFORMATION</u>
      - v. -                                    :
                                                :        11 Cr.
BRADFORD VAN SICLEN,                            :
                                                :
                         Defendant.             :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: NOV 1 6 2011

<u>COUNT ONE</u>
(Conspiracy to Commit Securities Fraud and Wire Fraud)

The United States Attorney charges:

<u>Relevant Persons and Entities</u>

1.    At all times relevant to this Information,
Praetorian Global Fund, Ltd. ("Praetorian") was a professional
mutual fund registered, or in the process of being registered, in
the British Virgin Islands.

2.    At all times relevant to this Information,
Praetorian G Power I, LLC ("G Power I"), Praetorian G Power II,
LLC ("G Power II"), Praetorian G Power III, LLC ("G Power III"),
Praetorian G Power IV, LLC ("G Power IV"), Praetorian G Power V,
LLC ("G Power V"), Praetorian G Power VI, LLC ("G Power VI"),
Praetorian G Power VII, LLC ("G Power VII"), Praetorian G Power
VIII, LLC ("G Power VIII"), Praetorian G Power IX, LLC ("G Power
IX") and Praetorian G Power X, LLC ("G Power X")(collectively,
the "G Power Entities"), were Delaware limited liability
companies set up as special purpose vehicles to receive

investments for Praetorian.

3.    At all times relevant to this Information,
BRADFORD VAN SICLEN, the defendant, served as a Managing Director
of Praetorian.

4.    At all times relevant to this Information, a co-
conspirator not named as a defendant herein ("CC-1") controlled
Praetorian and the G Power Entities and exercised day-to-day
management decisions of Praetorian.   CC-1 held himself out as
Chairman of the Advisory Board of Praetorian.

5.    At all times relevant to this Information, First
American Service Transmittals, Inc. ("FAST") was a Florida
corporation that purported to provide escrow services.

<u>The Scheme to Defraud</u>

6.    From in or about November 2009 up to and including
in or about September 2011, BRADFORD VAN SICLEN, the defendant,
CC-1, and others known and unknown, perpetrated a scheme to
defraud investors through the fraudulent promotion and sale of
interests in the G Power Entities.   Specifically, VAN SICLEN, CC-
1, and others falsely represented that the G Power Entities owned
shares in the stock of private companies, such as Facebook, Inc.
("Facebook") and Groupon, Inc. ("Groupon") among others, that
were soon expected to complete an initial public offering and
therefore be publicly traded.   Ownership of stock in these
private companies was particularly attractive because, as VAN

-2-

SICLEN and others represented, an initial public offering would likely increase the value of the shares.  In truth and in fact, however, and as VAN SICLEN well knew, neither Praetorian nor the G Power Entities owned the shares that VAN SICLEN and others claimed those entities owned.

       7.   In 2010 and 2011, BRADFORD VAN SICLEN, the defendant, along with CC-1, claimed that G Power IV owned at least one million shares of Facebook, and that G Power V owned at least one million shares of Groupon.  In furtherance of the scheme, and to solicit investments for the G Power Entities, VAN SICLEN drafted and sent out subscription agreements that expressly made these false representations.  For example, the subscription agreement for G Power IV stated that it had been "capitalized ... with a minimum of 1,000,000 shares of [Facebook]," and the subscription agreement for G Power V stated that it had been "capitalized ... with a minimum of 1,000,000 shares of the (sic) Groupon Inc."

       8.   Based on the misrepresentations of BRADFORD VAN SICLEN, the defendant, CC-1, and others known and unknown, investors sent more than $11 million to FAST for the purpose of investing in private shares of stock purportedly owned by the G Power Entities.

       9.   In addition, in order to reassure investors that their money would be safe, BRADFORD VAN SICLEN, the defendant,

CC-1, and others known and unknown, told investors that their money would be held in "escrow accounts" maintained by FAST at Branch Bank & Trust ("BB&T"), located in Florida, until such time as the specific G Power entity offering was complete. Instead, the vast majority of the investor money sent to the purported escrow accounts was shortly thereafter transferred to other entities associated with CC-1, and spent on personal items for CC-1 and his family, such as expensive jewelry, boats, and cars.

## The Conspiracy

10. From in or about November 2009 up to and including in or about September 2011, in the Southern District of New York and elsewhere, BRADFORD VAN SICLEN, the defendant, CC-1, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, and wire fraud, in violation of Title 18, United States Code, Section 1343.

## The Objects of the Conspiracy

### Securities Fraud

11. It was a part and an object of the conspiracy that BRADFORD VAN SICLEN, the defendant, CC-1, and others known and unknown, willfully and knowingly, directly and indirectly, by use

of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making and causing to be made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5.

<u>Wire Fraud</u>

12.  It was further a part and an object of the conspiracy that BRADFORD VAN SICLEN, the defendant, CC-1, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals,

-5-

pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Means And Methods Of The Conspiracy

13.    Among the means and methods by which BRADFORD VAN SICLEN, the defendant, CC-1, and others known and unknown, would and did carry out their conspiracy, were the following:

a.    VAN SICLEN, CC-1 and others falsely represented that the G Power Entities owned shares in the stock of private companies such as Facebook and Groupon.

b.    VAN SICLEN drafted and sent out subscription agreements that expressly made these false representations.

c.    VAN SICLEN, CC-1 and others solicited money from investors based on such false representations.

d.    VAN SICLEN, CC-1 and others told investors that their money would be held in the escrow accounts until such time as the G Power entity offering was complete, and the investors received their interest in the G Power entity.

e.    Based on the misrepresentations of VAN SICLEN, CC-1 and others, investors sent more than $11 million to FAST for the purpose of investing in private shares of stock purportedly owned by the G Power Entities.

### Overt Acts

14.    In furtherance of the conspiracy, and to effect

the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York, and elsewhere:

   a. In or about May 2011, in New York, New York, CC-1 met with others to discuss the possible sale of shares of Facebook, Groupon, and other securities.

   b. On or about June 7, 2011, BRADFORD VAN SICLEN, the defendant, spoke by telephone from New Jersey with an individual in New York, New York, concerning arrangements for a meeting about the possible sale of Facebook shares.

   c. In or about June 2011, VAN SICLEN attended a meeting in New York, New York, and discussed the possible sale of Facebook shares.

   d. On or about July 6, 2011, VAN SICLEN caused a $73,000 wire transfer to be made from an account at JP Morgan Chase Bank in New York, New York, to an account at Branch Bank & Trust in Florida.

   (Title 18, United States Code, Section 371.)

<u>COUNT TWO</u>
(Securities Fraud)

   The United States Attorney further charges:

   15. The allegations contained in paragraphs 1 through 9 and 13 through 14 are repeated, realleged and incorporated by reference as if fully set forth herein.

   16. From in or about November 2009 up to and including

-7-

in or about September 2011, in the Southern District of New York and elsewhere, BRADFORD VAN SICLEN, the defendant, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, as set forth above, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, namely investors who purchased interests in G Power IV.

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18 United States Code, Section 2.)

COUNT THREE
(Wire Fraud)

The United States Attorney further charges:

17.   The allegations contained in paragraphs 1 through 9 and 13 through 14 are repeated, realleged and incorporated by reference as if fully set forth herein.

18.   From in or about November 2009 up to and including

-8-

in or about September 2011, in the Southern District of New York and elsewhere, BRADFORD VAN SICLEN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to wit, a scheme to commit wire fraud, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, a writing, sign, signal, picture, and sound for the purpose of executing such scheme and artifice, to wit, on or about June 7, 2011, VAN SICLEN made an interstate telephone call in connection with his efforts to sell shares of Facebook.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
(Obstruction)

The United States Attorney further charges:

19.  The allegations contained in paragraphs 1 through 9 and 13 through 14 are repeated, realleged and incorporated by reference as if fully set forth herein.

20.  On or about August 10, 2011, BRADFORD VAN SICLEN, the defendant, voluntarily spoke with representatives of the U.S. Securities and Exchange Commission (the "SEC"). During that interview, VAN SICLEN claimed, among other things, that G Power IV owned more than one million Facebook shares, when in truth and in fact, and as VAN SICLEN well knew, neither Praetorian, G Power

-9-

IV nor CC-1, owned Facebook shares.  Also during the interview,
VAN SICLEN stated that CC-1 was merely an investor in Praetorian,
when, in truth and in fact, and as VAN SICLEN well knew, CC-1 was
in control of, and made strategic and day-to-day management
decisions for Praetorian.

   21.  On or about August 10, 2011, in the Southern
District of New York and elsewhere, BRADFORD VAN SICLEN, the
defendant, willfully and knowingly, corruptly influenced,
obstructed and impeded, and endeavored to influence, obstruct and
impede the due and proper administration of the law under which a
pending proceeding was being had before a department and agency
of the United States, namely, the SEC, by providing and causing
to be provided false and misleading information to the SEC
relating to the scheme described in Counts One, Two and Three.

   (Title 18, United States Code, Sections 1505 and 2.)

<u>FORFEITURE ALLEGATION</u>

   22.  As the result of committing the conspiracy to
commit securities fraud and wire fraud offense alleged in Count
One, the securities fraud offense alleged in Count Two, and the
wire fraud offense alleged in Count Three, in violation of Title
18, United States Code, Sections 371, 1343 and 2, Title 15,
United States Code, Sections 78j(b) and 78ff, and Title 17, Code
of Federal Regulations, Section 240.10b-5, BRADFORD VAN SICLEN,
the defendant, shall forfeit to the United States, pursuant to 18

U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense.

<u>Substitute Asset Provision</u>

a.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981 and
Title 28, United States Code, Section 2461.)

PREET BHARARA
United States Attorney

-11-